*464 OPINION OF THE COURT
Stanley A. Smolkin, J.
This is a small claims action wherein the plaintiff seeks to enforce rights and to recover damages from the defendant for alleged violations of the Telephone Consumer Protection Act of 1991 (47 USC § 227). A trial was held in this matter on November 6, 2008, at which time the plaintiff appeared pro se, and the defendant appeared by its counsel, Eric S. Finger. After hearing testimony and receiving exhibits from both parties, this court reserved decision.
Findings of Fact
Based upon the credible evidence presented at trial, the court makes the following findings of fact:
The plaintiff, Warren E. Pollock, purchased a cellular telephone in June 2008. The telephone number assigned to said cellular telephone was reissued from a previous user. The previous user of the telephone number assigned to the plaintiff for his new cellular telephone was a client of the defendant, Island Arbitration & Mediation, Inc. Said company, based in Mineóla, New York, provides conflict resolution services to local law firms. The previous user of the telephone number apparently used the number for a facsimile machine. The plaintiff alleges that since June 2008 the defendant has attempted to place over 100 facsimile transmissions to his cellular telephone at all hours of the day and night. The plaintiff additionally maintains that at no time has he had any business relationship with the defendant.
The plaintiff contacted the defendant and left voice mail messages for the defendant in which he requested to be removed from the defendant’s call list, but he did not provide the defendant with his telephone number. Although the plaintiff made repeated requests to the defendant seeking to be removed from its call list, the plaintiff never provided his telephone number to the defendant and the attempted facsimile transmissions continued. The plaintiff sought the assistance of the Long Beach Police Department on July 4, 2008. At that time, a Long Beach police officer called the defendant’s phone number and left a voice mail message requesting the defendant to cease its attempted facsimile transmissions to the plaintiffs phone number, but the officer did not provide the plaintiffs telephone number to the defendant. The attempted facsimile transmissions continued and the plaintiff filed a police report on July 8, 2008.
The plaintiff sent the defendant a letter dated July 17, 2008 in the form of a bill seeking “costs incurred.” Apparently before *465 the defendant’s receipt of this letter, the defendant hired Triangle Investigation Bureau, Inc. to locate and contact the plaintiff, ostensibly in an effort to obtain his telephone number so that the defendant could remove the plaintiffs number from its call list. According to a report from Triangle to the defendant dated July 18, 2008, Triangle was able to uncover the plaintiffs address but was unable to find a phone number for the plaintiff. Triangle was also unsuccessful in its attempts to contact the plaintiff. However, now having obtained the plaintiffs address, the defendant sent a letter to the plaintiff dated July 24, 2008, in which the defendant acknowledged receipt of the plaintiffs letter dated July 17, 2008 and informed him that “the only way we can delete your telephone number from our fax list is for you to provide us with your number so we can remove it from the list.” In its letter the defendant also provided the plaintiff with a phone number and contact person to facilitate the process. The plaintiff ultimately provided his telephone number to the defendant and it promptly removed the plaintiff from its list, after which the attempted facsimile transmissions to the plaintiffs cellular telephone ceased.
The plaintiff subsequently commenced the instant small claims action.
Conclusions of Law
The Telephone Consumer Protection Act of 1991 ([TCPA] 47 USC § 227) is intended to, among other things, provide a remedy to consumers for telemarketing abuses by permitting them to sue and obtain monetary awards based upon a violation of the statute (see Kaplan v Democrat & Chronicle, 266 AD2d 848, 849 [4th Dept 1999], citing 137 Cong Rec S16204; Kaplan v First City Mtge., 183 Misc 2d 24 [Rochester City Ct 1999]). The statute preserves the “right to be let alone” famously classified by United States Supreme Court Justice Louis Brandéis as “the most comprehensive of rights and the right most valued by civilized men” (Olmstead v United States, 277 US 438, 478 [1928, Brandeis, J., dissenting] [emphasis supplied]).
It was the intent of Congress to confer exclusive jurisdiction in state courts in order to facilitate enforcement of the TCPA by individual consumers (see Schulman v Chase Manhattan Bank, 268 AD2d 174 [2d Dept 2000]; 137 Cong Rec S16204-01, S16205-S16206). New York State courts, including small claims courts, have properly exercised jurisdiction over TCPA claims (see e.g. Schulman v Chase Manhattan Bank, supra; Kaplan v Democrat & Chronicle, supra; Kaplan v First City Mtge., supra).
*466 The TCPA permits the recovery of damages for actual monetary loss or a punitive award of $500 for each violation, whichever is greater (see 47 USC § 227 [b] [3] [B]). The statute provides courts with the discretionary authority to increase the award of damages by up to three times the amount as stated above, provided that the courts find that the defendant willfully or knowingly violated the statute (see 47 USC § 227 [b] [3]). Since this statutory remedy of $500 for each violation is punitive in nature rather than compensatory, a plaintiff seeking to recover under the TCPA is not required to prove actual monetary losses or specific damages resulting from the violation of the statute (see Kaplan v Democrat & Chronicle, supra).
Impermissible acts under the TCPA include:
(1) the making of “any call . . . using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a . . . cellular telephone service” (47 USC § 227 [b] [1] [A] [in]);
(2) initiation of “any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party” (47 USC § 227 [b] [1] [B]);
(3) the use of “any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement” (47 USC § 227 [b] [1] [C]); and
(4) the “use [of] an automatic telephone dialing system in such a way that two or more telephone lines of a multi-line business are engaged simultaneously” (47 USC § 227 [b] [1] CD]).
The provision regarding unsolicited facsimiles is accompanied by numerous exceptions, including that an unsolicited facsimile advertisement may be permissible provided that it contains a notice which complies with certain requirements delineated in the statute (see 47 USC § 227 [b] [1] [C] [iii]). One of the requirements of the notice is that it must advise the recipient that it may make a request to the sender of the unsolicited facsimile not to send any future unsolicited advertisements (see 47 USC § 227 [b] [2] [D] [ii]). The statute specifically notes that such a request by the recipient is compliant with the statute only if, among other things, “the request identifies the telephone number or numbers of the telephone facsimile machine or machines to which the request relates” (47 USC § 227 [b] [2] [E] [i]).
*467 Although the plaintiff identifies the defendant’s attempted facsimile transmissions to the plaintiffs cellular telephone as TCPA violations falling under category (3) as listed above (47 USC § 227 [b] [1] [C]), this classification is incorrect. While it was the defendant’s apparent intent to send advertisements via facsimile transmissions to a telephone facsimile machine, the fact remains that the transmissions were sent to (and unable to be received by) a cellular telephone, not a facsimile machine. Accordingly, this provision of the TCPA is inapplicable to the instant matter.
If there is any violation of the TCPA in the instant matter, such violation can only be found in the first category of impermissible acts delineated in the TCPA as set forth above, i.e., the making of “any call. . . using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a . . . cellular telephone service” (47 USC § 227 [b] [1] [A] [iii]). In order to determine whether this provision of the TCPA applies to the defendant’s actions, two issues must be resolved: First, whether the defendant “called” the plaintiff, and second, if it did, whether the defendant used an “automatic telephone dialing system” to do so.
The TCPA does not define the word “call.” The Court of Appeals of Arizona appears to be the only court which has addressed the issue of what constitutes a “call” for the purposes of this provision of the TCPA. In Joffe v Acacia Mtge. Corp. (211 Ariz 325, 121 P3d 831 [2005]), upon answering his ringing cellular telephone, the plaintiff Rodney Joffe discovered that he had received an unrequested text message from the defendant mortgage company, Acacia Mortgage Corporation. He subsequently received another text message from Acacia in a similar fashion. Joffe sued Acacia, alleging violations of the TCPA, specifically 47 USC § 227 (b) (1) (A) (iii). Acacia argued that the TCPA only regulated “ordinary telephone calls,” i.e., “calls that present the potential for two-way real time voice ‘intercommunication,’ that is, ‘a connection that allows two people to speak to each other in “real time” as though they were face to face’ ” (211 Ariz App at 329, 121 P3d at 835). After a thorough discussion of the legislative intent of the TCPA, an analysis of the ordinary, contemporary, common meaning of the word “call,” and an application of the rules of statutory construction, the Arizona Court of Appeals concluded, in pertinent part:
“It is the act of making a call, that is, of attempting to communicate to a cellular telephone number us *468 ing certain equipment, that the TCPA prohibits. Whether the call had the potential for a two-way real time voice communication is irrelevant. Accordingly, we hold an attempt to communicate by telephone constitutes a call under the TCPA even if the attempted communication does not present the potential for two-way real time voice intercommunication.” (211 Ariz App at 330, 121 P3d at 836.)
While the circumstances in the instant matter are somewhat different, in that the transmitted message could not be deciphered, this court concludes that the defendant’s actions of attempting to send a facsimile transmission to the plaintiffs cellular telephone constitutes a “call” for the purposes of this provision of the TCPA. Indeed, it is not the content of the communication, but rather the communication itself from which the TCPA seeks to protect the cellular phone-owning recipient (see 23 FCCR 559, 565 [2008] [the prohibition against the use of automatic telephone dialing systems to make calls to cellular telephones “applies regardless of the content of the call”]). Thus, it is of no moment as to whether the received message was in a language the recipient could not understand, a text message of indecipherable characters, or, as in the instant matter, an attempted facsimile transmission to a cellular telephone. This court finds that all of these fall under the purview of a “call” under this provision of the TCPA.
Having determined that the defendant’s attempted facsimile transmission to the plaintiffs cellular telephone constitutes a call for the purposes of 47 USC § 227 (b) (1) (A) (iii), the next issue that this court must address is whether the defendant used an automatic telephone dialing system when making such call to the plaintiff. Unlike the word “call,” the term “automatic telephone dialing system” is specifically defined in the TCPA. Pursuant to such definition, an “automatic telephone dialing system” is “equipment which has the capacity — (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers” (47 USC § 227 [a] [1]). Therefore, the particular mechanism which the defendant used in the instant matter to send its attempted facsimile transmissions to the plaintiff must be examined. The plaintiff maintains that since the defendant acknowledged that the plaintiffs cellular phone number was on its “list,” this is demonstrative of the use of an automatic telephone dialing system. The defendant does in fact concede that it made use of a call list of its clients’ telephone numbers. *469 However, the defendant’s use of a call list of its clients’ telephone numbers in order to generate the list of telephone numbers to which it intended to send facsimile transmissions is not demonstrative of the use of an automatic telephone dialing system. In fact, the use of a client call list suggests that the numbers the defendant called were in fact a specifically targeted group of numbers culled from its clients which were in no way randomly or sequentially generated (see Satterfield v Simon & Schuster, 2007 WL 1839807, 2007 US Dist LEXIS 46325 [ND Cal, June 26, 2007] [equipment used to send text messages to list of cellular telephone providers who specifically opted to receive promotions is not automatic telephone dialing system]; cf. Joffe v Acacia Mtge. Corp., supra [the use of computer to randomly or sequentially produce telephone numbers to be contacted via text message constituted automatic telephone dialing system]). Since the plaintiff did not establish that the defendant used a dialing system which randomly or sequentially generated telephone numbers, the plaintiff cannot establish that the defendant placed a call to a cellular telephone using an automatic telephone dialing system pursuant to 47 USC § 227 (b) (1) (A) (Hi).
Accordingly, inasmuch as the plaintiff has not established that the defendant violated any provision of the TCPA, and considering that the plaintiff failed to timely provide his telephone number to the defendant so that it could remove him from its call list, the court finds in favor of the defendant and the plaintiffs case is dismissed.